IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEWAINE NICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3113 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | MEMORANDUM AND ORDER |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed an application for disability benefits under Title II and Title XVIII of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 42 U.S.C. § 1381 *et seq.*, on February 22, 2006. The Secretary denied the application initially, and again on reconsideration. Plaintiff alleges a disability date beginning December 31, 2004. He claims a number of disabilities including constant headaches, lower back pains from disc abnormalities, fractured clavicles in both shoulders which are not properly set, numbness and pain in his hands, and severe mental problems. After a hearing the administrative law judge ("ALJ") found Plaintiff not disabled under the Act. Plaintiff appeals these findings and claims that the ALJ failed to give appropriate weight to the treating physician; failed to give the vocational expert a proper hypothetical which include his mental health limitations; and failed to consider the severity of his complaints of pain and depression. I have now reviewed the record, the ALJ's evaluation and findings, the medical evidence, the parties' briefs, the transcript, and the applicable law. I conclude that the ALJ's findings are not supported by substantial evidence on the record as a whole.

## BACKGROUND

Plaintiff testified he was born in 1969 and received a GED in 2000. He has a past work history as an auto body worker, mobile home setup worker, loader, operator, tow truck operator, heavy equipment operator, and ranch worker. The medical records show Plaintiff separated his left shoulder in 1999 and re-injured it in 2003. He saw a chiropractor several times in 2005. In 2006 Plaintiff saw Dr. Kent Allison for back pain, and x-rays showed degenerative changes of the cervical and thoracic spine and a deformity to Plaintiff's right clavicle with tenderness in the thoracic and lumber spine and left shoulder. Tr. at 120. Dr. Allison opined that plaintiff had "significant osteoarthritis in the cervical spine as well as the thoracic and lumber spine." Tr. at 121. Dr. Allison also opined that Plaintiff could no longer work as a laborer. Tr. at 121, 145. Plaintiff returned to see Dr. Allison in 2006 complaining of numbness and pain in his hand, shoulder and back. An MRI showed moderate multilevel disc degeneration and moderate asymmetric stenosis and mild to moderate neural foraminal stenosis. Thereafter, Plaintiff saw Dr. Bernard Keown, an orthopaedic surgeon, for his shoulder pain. This pain was apparently caused from a motorcycle accident. Dr. Keown believed Plaintiff had a labral tear. Dr. Heber Crockett diagnosed Plaintiff with a rotator cuff tear, SLAP tear, left shoulder arthritis, and impingement in 2008. Dr. Crockett recommended physical therapy and noted that plaintiff requested work restrictions, because he was applying for disability. Tr. at 187. Plaintiff underwent a consultative examination with Dr. David Lindley in 2008. Dr. Lindley concluded that Plaintiff could not do the work he was trying to do. Tr. at 190-93.

Dr. Allison also diagnosed Plaintiff in early 2005 with situational depression and anxiety. Tr. at 120. Dr. Allison prescribed Lexapro and told Plaintiff to return in a month.

Tr. at 120.  Plaintiff returned a year later.  Plaintiff also saw Victoria Dugger, MS, LMHP, PLADC, at Lutheran Family Services for counseling beginning in March 2005.  She found that Plaintiff had suicidal ideations, was depressed and exhibited extreme negativism.  Tr. at 144.  Plaintiff reported having as many as three to five anxiety attacks per day, Tr. at 144, and Ms. Dugger said she would refer him to Adult Protective Services as he "is unable to carry out some of his daily living skills."  Tr. at 143.  Plaintiff saw Dr. John Shybut, Ph.D., for a psychological evaluation in May 2006.  Dr. Shybut found Plaintiff had unimpaired judgment and above average intellectual functioning, but diagnosed general anxiety disorder and early onset dysthymic disorder.  Tr. at 168.  Three weeks later Plaintiff returned to Dr. Shybut's office and saw nurse practitioner Rebecca Ott who noted Plaintiff said he had been depressed since childhood; could not sleep; and felt hopeless.  She prescribed an anti-depressant for Plaintiff.

In July 2006 during a follow up visit to the same clinic, Plaintiff saw Dr. Tamara Johnson and stated he was doing better.  Tr. at 157.  He made the same statement to Dr. Johnson in October 2006.  Tr. at 153.  Plaintiff returned to Dr. Johnson in May 2007 and was diagnosed with major depressive disorder.  Tr. 151.  Plaintiff stopped taking his medication but began taking it again.  Tr. at 151.  Dr. Johnson increased Plaintiff's dosage in August 2007.  Tr. at 150.  In June 2008 Dr. Johnson stated that Plaintiff could not work because of his depression and physical problems.  Tr. at 185.

In June 2008 Ms. Dugger wrote a letter to Plaintiff's counsel reporting that Plaintiff was chronically depressed, had an irritable mood, had severe bipolar disorder, and that his mental health had in fact deteriorated.  Tr. at 140-41.  She also concluded that his chronic pain and medical issues interfered with his ability to complete his daily living activities.  Tr.

at 141. She further stated that Plaintiff's "mental health has deteriorated over the past several months to the point of despondency." Tr. at 141.

Plaintiff testified that his teenage son lived with him; that he drove occasionally; did some housework; like to fish; and watched television and listened to the radio frequently. He further testified that he could stand for a couple of hours in an eight-hour day and could sit for the same amount of time. He stated that he had difficulty bending or stooping and had trouble lifting.

## ALJ DECISION

The ALJ determined that Plaintiff had the following severe impairments: low back syndrome, mild to moderate disc desiccation of the cervical spine, left shoulder tear, history of clavicle fracture, and depression (Tr. 17). The ALJ then concluded that Plaintiff did not have impairments equal to those contained in 20 C.F.R. pt. 404. Tr. at 18. Further, the ALJ found Plaintiff had the functional capacity to carry 20 pounds frequently; 10 pounds occasionally; to stand or walk for a total of 6 hours per day or sit for six hours per workday; to occasionally climb, stoop and reach overhead with the upper left arm; and was limited to simple and routine tasks. Tr. at 18-19. The ALJ also concluded that Plaintiff could not perform his former work, but he could do other jobs in the economy. Tr. at 25-26. Accordingly, the ALJ found that Plaintiff was not disabled.

## STANDARD OF REVIEW

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 404.1505. A

claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantially gainful work which exists in [significant numbers in] the national economy. . . ." 42 U.S.C. § 423 (d)(2)(A).

The ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id*. at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the

5

record is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel,* 188 F.3d 1047, 1050 (8th Cir. 1999). If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted).

Residual functional capacity ("RFC") is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. Soc. Sec. Rul. 96-8p. RFC is what an individual can still do despite his impairments and the resulting limitations. While the RFC is a medical question, *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000), RFC is not based solely on "medical" evidence. *See McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations).

### TREATING PHYSICIAN AND SUBJECTIVE COMPLAINTS

Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his own opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The standard, in the Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.  the [plaintiff's] daily activities;
> 2.  the duration, frequency and intensity of the pain;
> 3.  precipitating and aggravating factors;
> 4.  dosage, effectiveness and side effects of medication;
> 5.  functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaksi v. Heckler*, 739 F.2d at 1322 (emphasis in original). "Pain is recognized as disabling when it is not remedial and precludes claimant from engaging in any form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability." *Cruse v. Bowen,* 867 F.2d 1183, 1183 (8th Cir. 1989).

"Not all pain reaches a level [at] which it is disabling." *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart,* 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

Plaintiff claims the ALJ erred when he failed to properly weigh the opinions of Dr. Johnson and Ms. Dugger. The ALJ found not only that the objective medical evidence did not support Plaintiff's allegations of disability, but also that Plaintiff's subjective complaints were inconsistent with the record as a whole. Tr. 24-25. The ALJ found that Plaintiff's medical records established that he suffered from low back syndrome, mild to moderate disc desiccation of the cervical spine, left shoulder tear, history of clavicle fracture, and depression. Tr. 17. The ALJ further determined that, taken as a whole, the medical evidence failed to support Plaintiff's claim that his impairments rendered him "disabled" and therefore unable to work. Tr. 27. The ALJ determined that Plaintiff's subjective complaints of pain and mental health issues were not substantiated by the objective evidence. The

8

ALJ credited Dr. Crockett's comments about Plaintiff's motivation in connection with his desire to obtain disability benefits. The ALJ also found that Plaintiff's statements regarding daily activities was consistent with the ability to do light work. Finally, the ALJ noted that Plaintiff's physical and mental symptoms could be improved with medications and that Plaintiff chose at times not to take those medications. The treating physician Dr. Johnson's opinion that Plaintiff could not work was accorded very little weight by the ALJ, apparently because Dr. Johnson had not treated Plaintiff for six months prior to submitting the note that Plaintiff could not work. The ALJ also accorded little weight to Ms. Dugger's letters, ostensibly because they did not include the current treatment records to support her conclusions. Further, the ALJ contends that Ms. Dugger's diagnosis of bipolar disorder or suicide is not substantiated by any other evidence in the record.

The court agrees with Plaintiff with respect to the ALJ's failure to adequately consider the opinions of the treating physician, Dr. Johnson, and the treating therapist, Ms. Dugger. They treated Plaintiff over a period of time and both concluded that Plaintiff could not work. Ms. Dugger had gone so far as to recommend that Adult Protective Services intervene, as Plaintiff could not take care of himself. The ALJ instead relied heavily on the state agency medical consultants who reviewed the record. Tr. at 19. There is no law that requires one medical expert opinion be substantied by another. Ms. Dugger opined that Plaintiff has bipolar disorder. The court notes for the record that none of the physicians diagnosed Plaintiff with bipolar disorder. However, there is evidence in the record that treating physician Dr. Allison treated Plaintiff for depression and anxiety and prescribed Lexapro. There is no evidence in the record to the contrary. In fact other medical examiners had given Plaintiff medicine for his anxiety, depression and other mental health

issues. In addition, Ms. Dugger assessed Plaintiff with a Global Assessment Functioning score of 35, indicating impairment in reality testing, communication, and major impairment in several areas, such as work, family, judgment, mood and thinking. The court finds that the ALJ substantially discounted all the objective and subjective evidence and inappropriately substituted his opinion for the medical opinions. *Ness*, 904 F.2d at 435. Accordingly, the court finds there is not substantial evidence to support the ALJ's decision in this regard. The ALJ did not give the treating physicians appropriate weight when making his decision, particularly when the court evaluates the physical and mental limitations of Plaintiff as well as the pain experienced by Plaintiff.

## VOCATIONAL EXPERT

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless

when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart,* 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir. 1997) (citing *Porch v. Chater,* 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater,* 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

The ALJ called Judith Najarian, a vocational expert, to testify in this case. Tr. 244-250. When asked the first hypothetical, which included those impairments which the ALJ found credible, Ms. Najarian testified that the hypothetical person could act as an usher, greeter or surveillance monitor. Tr. at 248-49. When asked by the ALJ to assume that Plaintiff had limitations in getting along with co-workers, following instructions, working with the public, and responding appropriate to the work pressures, the vocational expert testified that Plaintiff could perform no work. Tr. at 249-250. In his third hypothetical the ALJ asked the vocational expert to consider that Plaintiff could stand no more than two hours, sit no more than two hours, lift no more than eight pounds, walk no more than ten minutes, and could only occasionally bend and stoop. The vocational expert testified that Plaintiff could not perform any jobs under those circumstances. Tr. at 250. The court finds that Plaintiff's testimony, in conjunction with the medical evidence, substantiates the second and third hypotheticals, but not the first hypothetical, and requires a finding that Plaintiff is disabled. The ALJ erred in relying on the first hypothetical, as it did not accurately include all the objective and subjective complaints experienced by Plaintiff.

Thus, because the record presented to the ALJ contains substantial evidence supporting a finding of disability, the Court may reverse and the case for entry of an order granting benefits to Plaintiff. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir. 1984). "Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir. 1992). In this case, the substantial evidence supporting a finding of disability is overwhelming. Under the circumstances, further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate. *Id.*

THEREFORE, IT IS ORDERED that the decision of the ALJ is reversed. This case is remanded for an award of benefits. A separate judgment is entered in conjunction with this Memorandum and Order. Plaintiff shall have fourteen days from the date of this Memorandum and Order to file a motion and supporting brief requesting attorney fees. Defendant shall have fourteen days thereafter to respond to the motion and brief.

DATED this 23rd day of March, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.